**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES HONE,<br><br>    Plaintiff,<br><br>    v.<br><br>STEIN MART, INC., JAY STEIN, D. HUNT HAWKINS, MARYANN MORIN, IRWIN COHEN, THOMAS L. COLE, TIMOTHY COST, LISA GALANTI, RICHARD L. SISISKY, and BURTON M. TANSKY,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James D. Hone ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.     This is an action against Stein Mart, Inc. ("Stein Mart" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in

connection with the proposed acquisition (the "Proposed Transaction") of Stein Mart by Stratosphere Holdco, LLC ("Parent") and Stratosphere Merger Sub, Inc. ("Merger Sub"), an indirect wholly-owned subsidiary of Parent.[1]

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Stein Mart's common stock.

7.      Defendant Stein Mart is a specialty off-price retailer that offers designer and name-brand fashion apparels, home décor merchandise, accessories, and shoes in the United States. The Company is incorporated in Florida and operates four stores throughout New Jersey. The

---

[1] Parent was formed by Kingswood Stratosphere Investor, LLC ("TopCo"), an affiliate of Kingswood Capital Management, L.P. ("Kingswood"), for the purpose of entering into and consummating the Proposed Transaction.

Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol, "SMRT."

8.      Defendant Jay Stein ("Stein") is the Chairman of the Board of the Company. Defendant Stein has been Chairman since 1989, and has been a director since 1968. He previously served as the Company's Chief Executive Officer ("CEO") from 1990 to 2001, and from 2013 to 2016. He served as interim CEO from 2011 to June 2013. According to the Proxy Statement (defined below), Defendant Stein, through Stein Family Holdco LLC (the "Rollover Investor"),[2] owned and controlled 35.9% of the Company's common stock as of February 11, 2020. The Rollover Investor has agreed to vote its shares in favor of the Proposed Transaction, and will roll over its ownership interest in the Company in exchange for equity securities of the Parent.

9.      Defendant D. Hunt Hawkins ("Hawkins") has been the Company's CEO since 2016 and serves as a director of the Company.

10.     Defendant MaryAnn Morin ("Morin") is President and a director of the Company.

11.     Defendant Irwin Cohen ("Cohen") is a director of the Company.

12.     Defendant Thomas L. Cole ("Cole") is a director of the Company.

13.     Defendant Timothy Cost ("Cost") is a director of the Company.

14.     Defendant Lisa Galanti ("Galanti") is a director of the Company.

15.     Defendant Richard L. Sisisky ("Sisisky") is a director of the Company.

16.     Defendant Burton M. Tansky ("Tansky") is a director of the Company.

17.     Defendants Stein, Hawkins, Morin, Cohen, Cole, Cost, Galanti, Sisisky, and Tansky are collectively referred to herein as the "Individual Defendants."

_____

[2] More specifically, according to the Proxy Statement, Defendant Stein is the manager of the Rollover Investor.

18.     Defendants Stein Mart and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

19.     Kingswood is a private investment firm primarily focused on businesses that are undergoing varying degrees of operational, financial or market-driven change. Kingswood's principal offices are located in Los Angeles, CA.

## SUBSTANTIVE ALLEGATIONS

### A.  Company Background and The Proposed Transaction

20.     Stein Mart is a national specialty off-price retailer offering designer and name-brand fashion apparel, home décor, accessories and shoes at discount prices.

21.     Stein Mart began in the early 1900s as a single store in Greenville, Mississippi. The Company operated 283 stores across 30 states as of November 2, 2019.

22.     On January 31, 2020, Stein Mart issued a press release announcing that it had entered into a definitive merger agreement under which an affiliate of Kingswood would acquire all of the outstanding common stock of Stein Mart not already beneficially owned by affiliates of Defendant Stein and related investors for $0.90 per share in cash. The press release states, in pertinent part:

### Stein Mart Enters into Transaction to Become a Private Company

January 31, 2020 09:20 ET | **Source:** Stein Mart, Inc.

### *Stein Mart Shareholders to Receive $0.90 per Share in Cash*

### *Price Represents a 38% Premium to the Closing Price on January 30, 2020*

JACKSONVILLE, Fla., Jan. 31, 2020 (GLOBE NEWSWIRE) -- Stein Mart, Inc. (NASDAQ: SMRT) ("Stein Mart" or the "Company") today announced it has entered into a definitive merger agreement under which an affiliate of Kingswood Capital Management, L.P. ("Kingswood") will acquire all of the outstanding

4

common stock of Stein Mart not already beneficially owned by affiliates of Jay Stein, Stein Mart's former CEO and current Chairman of the Board of Directors, and related investors for $0.90 per share in cash. Upon closing, Stein Mart will become a privately held company and Stein Mart common stock will no longer be listed or traded on any public stock market.

The purchase price represents a premium of approximately 38% to Stein Mart's closing stock price on January 30, 2020, the last trading day prior to this announcement.

The transaction was unanimously approved by the Stein Mart Board of Directors (other than Mr. Stein), acting on the unanimous recommendation of a Special Committee of independent directors that was granted full authority to conduct a comprehensive strategic review and evaluate, and if warranted, negotiate an acquisition proposal.

"The Special Committee and its advisors conducted a thorough and independent process to review the Company's strategic alternatives and identify a transaction that would maximize shareholder value. We believe that this transaction is in the best interest of all Stein Mart stakeholders, including our many loyal employees," said Richard L. Sisisky, Stein Mart Board member and Chairman of the Special Committee.

The transaction will be financed by debt provided by Wells Fargo Bank, National Association and Pathlight Capital LP and by equity provided by affiliates of Kingswood. As part of the transaction, an entity managed by Jay Stein will contribute its equity and, following the closing of the merger, will indirectly own one-third of Stein Mart after the closing.

The transaction, which is expected to close in the first half of calendar year 2020, is subject to approval by Stein Mart shareholders and the satisfaction of other customary closing conditions. The Stein Mart Board of Directors recommends that Stein Mart's shareholders vote to adopt and approve the merger agreement.

Stein Mart will file a Current Report on Form 8-K with the Securities and Exchange Commission (SEC), which will more fully describe the terms and conditions of the merger agreement and the proposed transaction.

**Advisors**

PJ SOLOMON is serving as financial advisor to the Special Committee, Foley & Lardner LLP is serving as the Special Committee's legal counsel, and Kingsdale Advisors is serving as the Company's proxy solicitor. Goodwin Procter LLP is serving as legal counsel to Kingswood and Latham & Watkins LLP is serving as legal advisor to Jay Stein.

**About Stein Mart**

Stein Mart, Inc. is a national specialty off-price retailer offering designer and name-brand fashion apparel for him, for her and now for Kids!, home décor, accessories and shoes at everyday discount prices. Stein Mart provides real value that customers love every day. The company operates 283 stores across 30 states. For more information, please visit www.SteinMart.com.

23.     On March 2, 2020, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Securities Exchange Act of 1934 in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

24.     The Proxy Statement, which recommends that Stein Mart shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by the Company's Special Committee's[3] financial advisor, PJ Solomon Securities, LLC ("PJ Solomon"), in connection with its fairness opinion; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving PJ Solomon.

25.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Special Committee and Our Board of Directors; Reasons for Recommending the Adoption of the Merger Agreement; Fairness of the Merger; (iii) Opinion of

---

[3] According to the Proxy Statement, "[t]he board of directors formed a special committee . . . consisting of [Defendants] Richard Sisisky (Chairman), Irwin Cohen, Thomas Cole and Timothy Cost (the "Special Committee") to consider and negotiate the terms and conditions of the merger and to recommend to the board of directors whether to pursue the merger and, if so, on what terms and conditions." Further, "[o]n January 26, 2018, the Special Committee engaged PJ Solomon Securities, LLC ("PJS") to serve as its financial advisor in connection with the Special Committee's work to identify and explore all potential strategic alternatives available to the Company, including a potential sale of the Company."

PJ Solomon Securities, LLC; and (iv) Projected Financial Information.

26.      Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, Stein Mart shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1.    Material Omissions Concerning the Company's Financial Projections

27.      The Proxy Statement omits material information concerning the Company's financial projections.

28.      The Proxy Statement provides that "[t]he Company provided the Acquiring Group[4] certain prospective financial information concerning the Company, including projected revenues, gross margins, net income and adjusted earnings before interest, taxes, depreciation and amortization ("Adjusted EBITDA")."

29.      The Proxy Statement sets forth tables containing summaries of portions of the "May 2019 Management Projections," "August 2019 Management Projections," "January 2020 Management Projections," and "FY2020 Budget" (collectively, the "Projections").

30.      The Proxy Statement, however, fails to disclose the following concerning the Projections: (1) all line items used to calculate (i) net income, (ii) adjusted EBITDA, and (iii) cash flows from operating activities; and (2) a reconciliation of all non-GAAP to GAAP metrics.

31.      The disclosure of the Company's projected financial information is material

---

[4] The Acquiring Group refers to (i) Stein Family Holdco LLC, an entity managed by Defendant Stein, and (ii) the Kingswood Group Filing Persons, consisting of Parent, Merger Sub, TopCo, Kingswood Intermediary I, Inc., Kingswood Intermediary II, Inc., Kingswood Capital Opportunities Fund I, L.P., Kingswood Capital Opportunities Fund II, L.P., and Kingswood.

because it would provide Stein Mart shareholders with a basis to project the future financial performance of Stein Mart and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

32.      The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Stein Mart shareholders.

### 2.   Material Omissions Concerning PJ Solomon's Financial Analyses

33.      In connection with the Proposed Transaction, the Proxy Statement omits material information concerning the analyses performed by PJ Solomon.

34.      The Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction utilized by PJ Solomon in its "*Selected Publicly Traded Companies Analysis*" and "*Selected Precedent Transactions Analyses*."

35.      The Proxy Statement fails to disclose the following concerning PJ Solomon's "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.5% to 11.5%, (ii) EBITDA multiples of 3.5x to 6.0x, and (iii) perpetuity growth rates ranging from 0.0% to 2.0%; (2) the range of illustrative terminal values for the Company; (3) the Company's adjusted net debt; and (4) the number of fully diluted shares of Company Common Stock as of January 27, 2020.

36.      The valuation methods, underlying assumptions, and key inputs used by

PJ Solomon in rendering its purported fairness opinion must be fairly disclosed to Stein Mart shareholders. The description of PJ Solomon's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Stein Mart shareholders are unable to fully understand PJ Solomon's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Stein Mart shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

37.     The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

38.     The Proxy Statement provides that, "[d]uring January and February of 2018, [PJ Solomon] conducted a sale process and contacted 15 parties, which included a mix of both strategic companies and financial sponsors. . . . [PJ Solomon] received four inbound queries from prospective financial sponsor buyers, all of which were invited to participate in the process. Of the 19 parties, five signed non-disclosure agreements and four received access to the Company's data room."

39.     The Proxy Statement provides that, during March 2018, "[a]s part of the continuing process to explore potential financing sources, [PJ Solomon] contacted 14 capital providers, seeking to raise approximately $100 million of debt and/or preferred equity. Of the 14 parties contacted, seven of the capital providers signed a non-disclosure agreement."

40.     The Proxy Statement provides that, "[o]n April 15, 2019, [PJ Solomon], at the request of the Special Committee on April 8, 2019, began contacting potential strategic and

financial buyers, totaling 71 parties (13 strategic buyers and 58 financial sponsors), of which Moelis had previously contacted 30, to discuss a sale of the Company. . . . Of the entire group, 16 parties executed non-disclosure agreements. The non-disclosure agreements, among other provisions, prohibited parties from discussing the transaction with potential financing sources, including Jay Stein without the permission of the Special Committee. The non-disclosure agreements also had standstill provisions which prohibited potential buyers from acquiring any shares of the Company or proposing any transaction with the Company outside of the process being conducted by the Special Committee."

41.     The Proxy Statement, however, fails to disclose whether Stein Mart's non-disclosure agreements contained standstill provisions with "don't ask, don't waive" ("DADW") provisions (including their time of enforcement) that would preclude these interested parties from making superior offers for Stein Mart.

42.     Without this information, the Company's shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Stein Mart shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

43.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Stein Mart shareholders.

### 4.   Material Omissions Concerning Potential Conflicts of Interest Involving PJ Solomon

44.     The Proxy Statement omits material information concerning potential conflicts of interest involving PJ Solomon.

45.     The Proxy Statement provides that "[t]he engagement letter between the Special Committee and [PJ Solomon] provides for a transaction fee that is estimated, based on the information available as of the date of announcement of the merger agreement, approximately $2.6 million, a substantial portion of which is contingent upon the closing of the merger and a portion of which was payable upon the delivery by [PJ Solomon] of its oral opinion, as of January 29, 2020, and its oral opinion, subsequently confirmed in writing, as of January 30. 2020."

46.     The Proxy Statement, however, fails to disclose the specific amount of PJ Solomon's fee that is contingent upon the consummation of the Proposed Transaction.

47.     The Proxy Statement provides that PJ Solomon served as the Special Committee's financial advisor "in connection with the refinancing of the Company's asset-backed loan facility in September 2018" but fails to specifically disclose the amount of compensation PJ Solomon received for these services.

48.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

49.     The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Stein Mart shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

52.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

53.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

54.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

55.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with and/or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of certain Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

60.     In addition, as the Proxy Statement sets forth at length, and as described herein,

13

certain Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Dated: March 12, 2020                                    Respectfully submitted,

                                                         **HALPER SADEH LLP**

                                                         /s/ Zachary Halper
                                                         Zachary Halper, Esq.
                                                         36 Kingston Run
                                                         North Brunswick, NJ 08902
                                                         Telephone: (212) 763-0060
                                                         Facsimile: (646) 776-2600
                                                         Email: zhalper@halpersadeh.com

                                                         Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
                                                         375 Park Avenue, Suite 2607
                                                         New York, NY 10152
                                                         Telephone: (212) 763-0060
                                                         Facsimile: (646) 776-2600
                                                         Email: sadeh@halpersadeh.com

                                                         *Counsel for Plaintiff*